# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: Nortel Networks Inc., Inc., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | 09-10138(KG) |
| _____ ) | | (Jointly Administered) |
| SNMP Research International, Inc. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SNMP Research, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-53454(KG) |
| | ) | |
| Nortel Networks Inc., *et al.*, | ) | |
| Nortel Networks Corporation, | ) | |
| Nortel Networks Limited, | ) | |
| Nortel Networks Global Corporation, | ) | |
| Nortel Networks International Corporation, | ) | |
| Nortel Networks Technology Corporation, | ) | |
| Genband US LLC, Genband, Inc., | ) | |
| Performance Technologies, Inc., | ) | |
| Perftech (PTI) Canada, Avaya Inc., | ) | |
| Radware Ltd., and John Doe Defendants 1- 00 | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | **Re Dkt No. 75** |

## OPINION RE RADWARE LTD.'S MOTION TO DISMISS

The Court is ruling on defendant Radware Ltd.'s ("Radware") motion to dismiss (the "Motion") (D.I. 75) this adversary proceeding as against it. The plaintiffs, SNMP Research International, Inc. and SNMP Research, Inc. (collectively, "SNMP") commenced this adversary proceeding on November 2, 2011 against Radware and others to recover its

damages relating to post-petition sales by Debtors of all of Debtors'.  Radware was the purchaser of some of the assets. For reasons which follow, the Court will dismiss the claims against Radware.

## BACKGROUND[1]

A brief recitation of the bankruptcy case to which this adversary proceeding relates may be helpful.  On January 14, 2009, Nortel Networks, Inc. and its affiliates located in the United States ("Nortel") filed petitions for bankruptcy pursuant to Chapter 11 of the Bankruptcy Code.  Nortel thereupon began the sale of all of its businesses and assets.  One of these sales involved the sale of Nortel's Layer 4-7 Application Delivery Business Assets (the "4-7 Assets") to Radware pursuant to Section 363 of the Bankruptcy Code, which the Court approved by Order, dated March 26, 2009 (D.I. 539).  Shortly thereafter, the sale closed and Nortel transferred to Radware the 4-7 Assets.

On November 2, 2011, SNMP filed the Complaint against Nortel, Radware and others.  SNMP is seeking damages and other relief from defendants for copyright infringement, misappropriation of trade secrets, unjust enrichment and conversion. Radware has moved to dismiss the Complaint pursuant to Bankruptcy Rule 7012.

---

[1]     Where possible, the Court will limit the discussion to matters which involve only Radware.

## THE FACTS

For purposes of the Motion, rather than summarize or interpret the facts, the Court will quote at length directly from the Complaint for purposes of addressing the bases for the Motion.

### COMPLAINT

\*   \*   \*

### III.  PARTIES

\*   \*   \*

32.    Upon information and belief, Defendant Radware Ltd. is an Israeli corporation with its principal place of business located at 22 Raoul Wallenberg Street, Tel Aviv 69710, Israel and principal place of business in the United States at 575 Corporate Drive Mahwah, New Jersey 07430.

\*   \*   \*

### IV.  FACTUAL ALLEGATIONS

#### A.  SNMP Products

\*   \*   \*

34.    At all times relevant to this Complaint, SNMP Research has been the owner of the copyrights to the software set forth on Table 1 attached to this Complaint as Exhibit A. The software identified on Table 1 is collectively referred to as "SNMP Products."

35.    At all times relevant to this Complaint, SNMPRI had a valid license agreement with SNMP Research, Inc. pursuant to which SNMPRI had the authority to license to third parties any of the SNMP Products that were owned by SNMP Research, Inc.

36.     On the dates set forth in Table 1, SNMP Research registered its copyrights to the SNMP Products with the United States Copyright Office. The SNMP Products and their copyright registration numbers are set forth in Table 1, attached to this Complaint as Exhibit A.

B.   Nortel License

37.     On December 23, 1999, SNMPRI and Defendant Nortel Networks Corporation executed a nonexclusive, limited license agreement (the "Nortel License," attached to this Complaint as Exhibit B).

38.     To license an SNMP Product, each Nortel entity that wished to license a specific SNMP Product was required to execute a schedule to the Nortel License.  In the Nortel License, and throughout the remainder of this Complaint, the Nortel entity or entities that executed a schedule to the Nortel License are referred to as a "Specified Entity" or collectively as "Specified Entities," as defined in the Nortel License.

39.     Each schedule to the Nortel License identified the SNMP Product or SNMP Products that the Specified Entity was licensed to possess, use and distribute with a Nortel Product.

40.     For each schedule, no Nortel entities, other than the Specified Entity that executed the schedule, were authorized to possess, use, or distribute the SNMP Products identified on the schedule.

41.     If a Specified Entity wished to use an SNMP Product for a purpose not identified on a particular schedule, the Specified Entity was required to execute a separate schedule.

42.     The schedules to the Nortel License, identifying (i) the particular SNMP Products that Nortel was authorized to use, (ii) the Specified Entity licensed to use the SNMP Products, and (iii) the particular purpose for which each SNMP Product could be used, are attached to the Complaint as collective Exhibit C.  The SNMP Products licensed for use and distribution with specific Nortel products are identified on the schedules in Exhibit C and are referred to herein collectively as "Licensed Products."

43.    *Pursuant to the Nortel License, SNMPRI and its third party suppliers including SNMP Research, Inc. retained all title to, interest in, and copyright to the Licensed Products.*

44.    *Pursuant to the Nortel License, SNMPRI granted to the Specified Entity that executed each schedule.*

*[A] non-exclusive, non-transferable worldwide license for Development Software specified in the relevant Schedule A to:*
    *i) use, copy, modify, prepare derivative works of, and distribute, within the Specified Entity, such Development Software for internal research and development,*
    *ii) use, copy, modify, prepare derivative works of, and distribute, within the Specified Entity, such Development Software to create and support Run-Time Software,*
    *iii) use, copy, prepare derivative works of, and distribute, within the Specified Entity, Run-Time Software for internal research and development, and*
    *iv) use, copy, prepare derivative works of, and distribute, within the Specified Entity, run-time Software to create and support Nortel Networks Products.*

45.    *Pursuant to the Nortel License, SNMPRI granted to a Specified Entity.*

*[A] non-exclusive, non-transferable worldwide license to directly or indirectly:*
    *i) sublicense End Users, pursuant to sublicense agreements, the right to use and copy (to the extent permitted in the relevant Schedule A) Run-Time Software and End User Documentation in association with Nortel Networks Products,*
    *ii) grant customers of End Users such licenses as may be reasonably necessary to enable such customer to use or make use of the Binary Code of Nortel Networks Products, and*
    *iii) distribute Run-time Software to End Users.*

5

46.    Pursuant to the Nortel License, a Specified Entity did not have the right to "distribut[e] the Run-time Software in Source Code form to any third party" or "distribute the EMANATE Subagent Development Kit in any form."

47.    The Nortel License included the following confidentiality and nondisclosure provision:

Any Confidential Information received by a Party [defined as the Specified Entity or SNMPRI] shall be retained in confidence and shall be used, disclosed, and copied solely for the purposes of, and in accordance with, this Agreement.  The receiving Party shall use the same degree of care as it uses to protect its own confidential information of a similar nature, but no less than reasonable care, to prevent the unauthorized use, disclosure or publication of the Confidential Information.  Use and dissemination of Confidential Information with the receiving Party shall only extend to those with a reasonable need to know the Confidential Information.

48.    Pursuant to the Nortel License, each Specified Entity could not use or sub-license any Licensed Product if such use or sub-license was not specified in the Nortel License or its schedules without SNMPRI's prior consent.

49.    Pursuant to the Nortel License, each Specified Entity could not transfer any SNMP Product to a third party if such transfer was not authorized in the Nortel License or its schedules without SNMPRI's prior consent.

50.    Pursuant to the Nortel License, each Specified Entity was obligated to pay to SNMPRI royalties, licensing fees, and maintenance fees for a Specified Entity's use and distribution of the Licensed Products.

51.    Pursuant to the Nortel License, each Specified Entity was obligated to keep any licensed or unlicensed SNMP Product confidential and was prohibited from disclosing it to any third party without SNMPRI's consent.

6

52.    *SNMPRI prepared approximately 103 schedules to the Nortel License detailing the SNMP Products that each Specified Entity was authorized to use or distribute with a specific Nortel product and the specific purposes for or limits on a Specified Entity's use and distribution of SNMP Products. [Footnotes omitted.]*

53.    *Specified Entity and SNMPRI either executed these schedules or, by not executing a schedule, Nortel represented to SNMPRI that it did not need a license to the SNMP Product identified on a particular schedule because it did not intend to use the particular SNMP Product represented by a schedule.*

54.    *Specified Entities and SNMPRI executed 59 schedules to the Nortel License. [Footnotes omitted.]*

55.    *Nortel represented to SNMPRI that Nortel was no longer using or possessing the SNMP Products identified on four schedules to the Nortel License.*

56.    *Four of the executed schedules to the Nortel License were superseded by other executed schedules.*

57.    *Nortel represented to SNMPRI that the SNMP Products on eight schedules to the Nortel License were transferred by Nortel to buyers in post-petition asset sales.*

58.    *SNMPRI has identified that the SNMP Products on eight additional schedules to the Nortel License were transferred by Nortel to buyers in post-petition asset sales.*

\* \* \*

D.    *Post-Petition Sales of Nortel's Assets Pursuant to Section 363 of the Bankruptcy Code*

a.    *Sale of the Layer 4-7 Application Delivery Business Assets to Radware*

\* \* \*

83.    *The Radware Order further stated:*

*Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction (a) to enforce and implement the terms and provisions of the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed in connection therewith; (b) to compel transfer of the Assets to the Successful Bidder; (c) to compel the Successful Bidder to perform all of its obligations under the Purchase Agreement; (d) to resolve any disputes, controversies or claims arising out of or relating to the Purchase Agreement, including without limitation the adjudication of any cure required under the Assumed and Assigned Contracts; and (e) to interpret, implement and enforce the provisions of this Order.*

84.    *On April 7, 2009, the Ontario Superior Court of Justice entered an order recognizing, implementing, and effectuating the Radware Order in Canada.*

85.    *On or around March 31, 2009, Nortel and Radware closed the sale of the Layer 4-7 Application Delivery Business Assets.*

86.    *On or around March 31, 2009, Nortel transferred to Radware the Layer 4-7 Application Delivery Business assets.*

87.    *Upon information and belief, when Nortel transferred the Layer 4-7 Application Delivery Business assets to Radware, it also distributed and disclosed to Radware the Licensed Products identified on Schedule 51A of the Nortel License, which were embedded within the Layer 4-7 Application Delivery Business assets.*

88.    *Upon information and belief, Nortel knew that it was transferring, distributing, and disclosing to Radware the SNMP Products identified in paragraph 87 when it transferred the Layer 4-7 Application Delivery Business assets to Radware.*

\* \* \*

8

E.    *Defendant Radware's Use of SNMP Products*

\*   \*   \*

157.    On or around August 10, 2010, SNMP Research sent a letter to Defendant Radware informing Defendant Radware that it believed Defendant Radware had possession of SNMP Products and requesting that Defendant Radware execute a license for the SNMP Products that SNMP Research believed were in Defendant Radware's possession.

158.    On or around August 16, 2010, Defendant Radware responded to SNMP Research's letter by asserting that it was not using any SNMP Products and therefore did not need to execute a license with SNMP Research.

159.    Upon information and belief, since March 31, 2009, Defendant Radware has possessed, used, distributed, disclosed, transferred, or otherwise profited from the SNMP Products identified in paragraph 156 in the ordinary course of its business without the authorization or consent of SNMP Research.

160.    Moreover, Defendant Radware has not paid SNMP Research royalties, licensing fees, or maintenance fees for its possession, use, distribution, disclosure, or transfer of the SNMP Products that it obtained from Nortel.

\*   \*   \*

Count III Copyright Infringement Due to Defendant Radware's Use and Transfer of SNMP products in the Ordinary Course of Business

\*   \*   \*

231.    Upon information and belief, since Defendant Radware acquired the SNMP Products identified in paragraph 87 in March, 2009, Defendant Radware has used, copied, transferred, sold, reproduced, distributed, or otherwise profited from SNMP Research's copyrighted work without the authorization or consent of SNMP Research and in violation of SNMP Research's exclusive rights under the Copyright Act (17 U.S.C. § 101, et seq.).

\* \* \*

### Count XI Misappropriation of Trade Secrets under the Delaware Uniform Trade Secrets Act Due to Defendant Radware's Acquisition, Use, and Disclosure of SNMP Products

\* \* \*

310.    In March 2009, Defendant Radware acquired SNMP Research's trade secrets when it acquired the Layer 4-7 Application Delivery Business assets from Defendant Nortel.

311.    Upon information and belief, after it acquired SNMP Research's trade secrets from Nortel, Defendant Radware used or disclosed SNMP Research's trade secrets without SNMP Research's express or implied consent because the SNMP Products identified in paragraph 87 were embedded within the Radware products that Defendant Radware sold or distributed in the ordinary course of its business operations.

312.    Upon information and belief, Defendant Radware's use or disclosure of SNMP Research's trade secrets has continued until the present.

313.    Upon information and belief, at the time of Defendant Radware's use or disclosure of SNMP Products identified in paragraph 87, Defendant knew that it did not have SNMPRI's express or implied consent to use or disclose those SNMP Products.

314.    Upon information and belief, at the time of Defendant Radware's use or disclosure of the SNMP Products identified in paragraph 87, Defendant Radware knew or had reason to know that its knowledge of these SNMP Products was acquired through improper means because it did not have a license to possess, use, distribute, or disclose these SNMP Products.

315.    Upon information and belief, Defendant Radware has received significant financial benefit from its unlicensed and unauthorized use of SNMP Research's trade secrets.

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion to dismiss for failure to state a claim requires a two-part analysis. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Courts first separate the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Courts must draw all reasonable inferences in favor of the non-moving party. *See Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000). However, the Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Courts must then determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a case specific determination, which requires the court "to draw on its judicial experience and common sense." *Id.* at 679. Essentially, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a claim.

*Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

If however, the court determines that no matter how true the allegations in the complaint may be, they could not entitle the plaintiff to relief, this basic deficiency should ". . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation marks omitted). Finally, the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555.

## DISCUSSION

### Sufficiency of the Complaint

The Court quoted at length from the Complaint to illustrate the reasons for its conclusion that SNMP's claims against Radware rest upon conclusion and speculation that fail to satisfy legal standards to survive a motion to dismiss.  The Complaint is the speculative and fact deficient complaint which *Twombly* and *Iqbal* and their progeny hold should be dismissed.

SNMP speculates and leaps to the conclusion that because Radware purchased assets from Nortel, and because Nortel licensed software from SNMP, that Radware copied, transferred, distributed and profited from the SNMP software.  These allegations are based upon information and belief, thereby further distancing them from fact.

Copyright Infringement Claim

The essence of SNMP's claim that Radware is liable for copyright infringement is its allegation, based upon information and belief, that Radware "used, copied, transferred, sold, reproduced, distributed or otherwise profited" from Radware's software. SNMP does not allege a single fact describing what Radware did in furtherance of infringement, what products were involved, when or with whom the activity occurred or any semblance of such specific allegations. The Complaint fails to provide such essential facts[2] which would enable the Court to sustain the Complaint. *Gee v. CBS, Inc.*, 471 F.Supp. 600, 643 (E.D. Pa. 1979), aff'd, 612, F.2d 572 (3d Cir. 1979).

The Court concludes that the Complaint does not contain the "factual content that allows the court to draw the reasonable inference that [Radware] is liable" for copyright infringement. *Iqbal*, 556 U.S. at 678. Instead, the copyright infringement claim in the Complaint is the "formulaic recitation of the elements of a cause of action" requiring dismissal. *Twombly*, 550 U.S. at 570. Accordingly, the Court will dismiss Count III of the Complaint.[3]

Misappropriation of Trade Secrets

SNMP has also charged Radware, along with other defendants, with misappropriation

---

[2]    The other elements requiring factual details to survive a motion to dismiss are: the products at issue are the subject of the copyright claims, the plaintiff owns the copyright, and the product at issue is registered with the United States Copyright Office. *Id.*

[3]    SNMP conceded at oral argument that because it did not register the copyright until well after the alleged infringement and publication, it is not entitled to statutory damages and attorney fees pursuant to 17 U.S.C. §§ 504 and 505.

of trade secrets.  Complaint, Count XI.  The Delaware Uniform Trade Secrets Act, 6 Del. C. §§ 2001, *et seq.*, contains the following elements  required to maintain a claim of misappropriation of trade secrets:  (1) an existing trade secret, (2) communicated by plaintiff to the defendant, (3) by a communication pursuant to an understanding, either express or implied, that secrecy would be respected, and (4) improper use or disclosure of the secret information in breach of the understanding and to the injury of the plaintiff.  *See*, *e.g.*, *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp.2d 654, 662-63 (D.Del. 2008) (case dismissed for failure to plead a plausible *prima facie* case).

Here, as with the copyright infringement claims, the Complaint does not come close to meeting the pleading requirements necessary to survive the Motion.  Instead of facts, SNMP makes conclusory, speculative claims.  SNMP claims only that "because the SNMP Products... were embedded within the Radware products that Defendant Radware sold or distributed in the ordinary course of its business," (Complaint, ¶ 311) that Radware misappropriated trade secrets.  The foregoing allegation is, of course, speculation.  SNMP does not provide facts to support the allegation.  What trade secrets did Radware misappropriate?  When and to whom did Radware communicate a specified trade secret? What relationship exists between SNMP and Radware upon which to support an agreement for secrecy?  The Complaint does not allege any such facts supporting what is merely conclusory speculation.  In *Accenture*, the Delaware District Court dismissed a trade secrets misappropriation case.  The central allegations in the complaint were that since defendant

had access to the trade secrets and quickly developed the product despite its small size and limited experience in the field, and based upon plaintiff's careful comparison, the defendant had violated plaintiff's trade secrets. The District Court dismissed the claim, finding that plaintiff did not plausibly state a claim because plaintiff merely stated conclusions and "a formulaic recitation of elements of a cause of action." SNMP has done likewise and the result must be the same as in *Accenture*, namely, dismissal.

Radware has also argued that SNMP's misappropriation claim is preempted by the copyright infringement claim. The Court will not address the preemption issue since it will be dismissing both the misappropriation claim and the copyright infringement claim. A ruling on the preemption issue would be advisory and thus it would be inappropriate to issue a ruling.

The Remaining Claims

SNMP has also charged Radware with unjust enrichment and conversion. The elements which courts apply in ruling upon both of these claims are quite specific and well settled.

A. Unjust Enrichment

The elements constituting a claim for unjust enrichment are: an enrichment, an impoverishment, a relation between the enrichment and impoverishment, the absence of justification and the absence of a legal remedy. SNMP has again failed to provide any facts which would satisfy the elements. Instead, in conclusory fashion, SNMP alleges in the

15

Complaint that "Radware has been unjustly enriched through the possession, use, transfer, sale, licenses reproduction, import and distribution of SNMP Research's SNMP Products."Complaint, ¶ 418.   There are no facts alleged which would allow the Court to plausibly deny the Motion.   In addition, the unjust enrichment claim is duplicative of the other claims -- copyright infringement and misappropriation of trade secrets.   Since the unjust enrichment claim is directly linked to these claims, their dismissal leads to the dismissal of the unjust enrichment claim.   *Penn Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F.Supp. 2d 458, 485 (D.Del. 2010).

B.   Conversion

A plaintiff bringing a claim for conversion must show:  it held an interest in the property, it had a right to possession of the property and the defendant converted the property thereby depriving plaintiff of control of the property.   *Liafail v. Learning 2000*, C.A. No. 01-599 GMS, 2002 U.S. Dist. LEXIS 22620, at *31 (D.Del. 2001).   The "property" is software, and the cases are clear that software, being intangible property, is not a proper subject for a claim of conversion.   *Tegg Corp. v. Beckstorm Elec. Co.*, 650 F. Supp. 2d 413, 432 (W.D. Pa. 2008).   *Tegg* also explained that a conversion claim for software is the equivalent to  a claim for copyright infringement.   *Id.  See also*, *Sullivan Assocs., Inc. v. Dellots, Inc.*, No. CIV. A. 97-5457, 1997 WL 778976, at*4 (E.D. Pa. Dec. 17, 1997).

In addition, SNMP has not pleaded the conversion claim with any facts supporting the elements of the conversion claim.   SNMP failed to identify the alleged converted property.

16

*Compare Liafail*, 2002 U.S. Dist. LEXIS at *32-33. The Court will dismiss the conversion claim.

Right to Amend

The Court will enter an Order dismissing the case against Radware with leave to amend the Complaint by a date certain. SNMP has argued that procedurally, the Court should grant leave to amend without dismissal, and cited two cases from the Third Circuit in which the courts below elected to grant leave to amend, with dismissal to follow in the absence of an amendment. These cases[4] are distinguishable and not at all persuasive, particularly in light of a more recent decision of our Court of Appeals, which SNMP also brought to the Court's attention. In *Fletcher - Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252-253 (3d. Cir. 2007), the Court of Appeals noted it previously rejected in non-civil rights cases that courts below grant leave to amend prior to dismissing a case.

Accordingly, the Court will issue an Order dismissing all counts against Radware and granting SNMP leave to file an Amended Complaint by a date certain.

Dated: December 10, 2013

KEVIN GROSS, U.S.B.J.

---

[4] *See Borelli v . City of Reading*, 532 F.2d 950 (3d Cir. 1976) (issue addressed in dicta); and *Shane v. Fauver*, 213 F.3d 113 (3d. Cir. 2000) (civil rights case).