**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: Nortel Networks Inc., *et al.*, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | 09-10138(KG) |
| _____ | ) | (Jointly Administered) |
| SNMP Research International, Inc. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SNMP Research, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 11-53454(KG) |
| | ) | |
| Nortel Networks Inc., *et al.*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Avaya Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | **Re: Dkt No. 150** |

## OPINION

The Court is addressing a narrow but complex issue in this adversary proceeding: does the Court have authority to enter judgments or orders with respect to the claims of the plaintiff, a non-debtor, against a non-debtor defendant for what are clearly non-core claims of copyright infringement, misappropriation of trade secrets under state law and breach of contract. Motion for Determination That This Court Lacks Authority to Enter Final Orders or Judgments as to Claims Against

Avaya, Inc. (the "Motion"). D.I. 150.  Here, the background facts and procedural complexities are significant in the Court's decision.  The parties are the plaintiffs, SNMP Research International, Inc. and SNMP Research, Inc. (jointly "SNMP"), and the defendants, Nortel Networks Inc., and its United States affiliates ("Debtors") and Avaya Inc. ("Avaya").

On January 14, 2009, Debtors filed petitions for relief pursuant to Chapter 11 of the Bankruptcy Code.[1]  Roughly nine years earlier, Nortel Networks Corporation ("NNC"), now a debtor in insolvency proceedings pending in Canada, had entered into a licensing agreement with SNMP giving NNC and certain subsidiaries the right to use certain SNMP software in their products.  Following the bankruptcy filing, the Debtors with Court approval sold their Enterprise Solutions Business assets to Avaya. Order, dated September 16, 2009. D.I. 1514.  The assets included the SNMP software.  Following the sale, Avaya and SNMP entered into an accession agreement governing Avaya's use of the certain SNMP software which SNMP had licensed to Debtors.

On November 2, 2011, SNMP filed its original complaint against Debtors, Avaya and others.  Thereafter, SNMP and the parties entered into agreements extending time to respond to the Complaint.  Before filing the Complaint, SNMP

---

[1] For a more thorough discussion of the Debtors' cases, *see In re Nortel Networks, Inc.*, 09-10138, 2015 WL 2374351 (Bankr. D. Del. May 12, 2015).

2

had agreed with Debtors to stay the adversary proceeding to allow those parties to mediate the dispute between them. SNMP and Debtors memorialized their agreement in a letter agreement, dated October 25, 2011. Avaya was not a party to the letter agreement and the terms expressly provided that "nothing in this agreement bars SNMP Research from pursuing its claims against the non-Nortel defendants in the Complaint." Avaya filed its answer to the Complaint on March 2, 2012. D.I. 33. SNMP dismissed its claims against certain defendants in June and July 2012.

Defendant, Radware Inc., moved to dismiss the claims against it on May 3, 2013. D.I. 75.[2] On the very day of oral argument (October 29, 2013), SNMP filed a Notice of Intent to File Motion to Withdraw the Reference but then did not move to withdraw the reference until March 17, 2015. D.I. 97. Between noticing its intent to move to withdraw the reference (May 3, 2013) and actually moving to withdraw the reference (March 17, 2015), a period of almost 17 months, SNMP filed a First Amended Complaint. D.I. 115. The Canadian Court also denied the motion to lift the stay which SNMP had sought prior to commencing the adversary proceeding so it could prosecute the claims against NNC. Also during the hiatus, the mediation between SNMP and Debtors concluded on May 8, 2014, without a settlement –

---

[2] The Court granted the motion to dismiss by Order, dated December 10, 2013. D.I. 114.

almost a year before SNMP filed its motion to withdraw the reference.

SNMP offers as its explanation for its actions and inaction that it was its plan to have all of the parties joined in one court, this Court, and then to move to withdraw the reference of the case with all defendants present rather than piecemeal. The case was stayed by agreement until 30 days after the Canadian Court decided the motion to lift the stay applicable to the Canadian Debtors. When the Canadian Court denied the lift stay motion on March 4, 2015, SNMP then moved to withdraw the reference. SNMP also argues correctly that although the case has been pending for four years, the adversary proceeding is still in its nascent stage.

SNMP also points to the Complaint, the First Amended Complaint and the Second Amended Complaint, filed on March 24, 2015, D.I. 160, (collectively, the "Complaints") as proof that it did not consent to or invoke the Court's authority to enter final orders and judgments. All plainly state that a jury trial is demanded and further state clearly as follows:

> This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. The causes of action against Nortel are core. The causes of action against Avaya are not core within the meaning of 28 U.S. § 157(b), and SNMP Research does not consent to the entry of final orders by the Bankruptcy Judge in this proceeding as to causes of action against Avaya.

*See*, *e.g.*, Second Amended Complaint, ¶ 12.

The Complaints further state:

> SNMP Research intends to seek the permission of the District Court to withdraw the reference to this Court of this adversary proceeding. SNMP Research alternatively relies on the subject matter jurisdiction of the District Court to hear this adversary proceeding independent of bankruptcy jurisdiction and venue. . . . Diversity jurisdiction over this adversary proceeding also alternatively exists. . . .

See, e.g., Second Amended Complaint, ¶ 14. At the same time, SNMP's Complaints contain 12 prayers for relief from "this Court," i.e., the Bankruptcy Court.

## ANALYSIS

### A. Non-core Claims - Wellness

All parties agree that the claims against Avaya are non-core claims. They are not listed among the "core proceedings" listed in 28 U.S.C. § 157(b); do not invoke substantive issues of bankruptcy law; and could by their nature arise outside of a bankruptcy proceeding. *See Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (identifying these factors as the test for whether a claim is non-core). The claims against Avaya are certainly non-core claims. The determination that the claims against Avaya are non-core might have ended the inquiry in SNMP's favor had the United States Supreme Court not fortuitously issued a ruling only two days before oral argument in this matter which turned the focus from the nature of the claims solely to whether SNMP had consented to the Court's jurisdiction and its authority

to issue final orders and judgments.

On May 26, 2015, the Supreme Court released its important opinion in *Wellness International Network, Ltd. v. Sharif*, No. 13-935, 2015 WL 2436619, (May 26, 2015). The decision will be the subject of in depth analysis in opinions and scholarly articles. Here, the Court will limit its discussion to how *Wellness* applies to the Motion. The Supreme Court made it clear, reversing an appellate court decision, that a party may consent to adjudication by a bankruptcy court even as to non-core matters. Such consent need not be express but may be implied so long as the consent is knowing and voluntary. In short, the Supreme Court held that:

> This case presents the question whether Article III allows bankruptcy judges to adjudicate such claims with the parties' consent. We hold that Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge.

*Wellness*, 2015 WL 2456619 at *3.

### B. Consent

Accordingly, the parties' and the Court's focus is directed to whether SNMP knowingly and voluntarily consented to the Court's authority to issue final orders and judgments. Did SNMP consent if not expressly then by action and inaction?

Avaya and the Debtors urge the Court to find that SNMP has consented to the Court's authority by virtue of its action and failure to act in a timely manner. They

point to the facts that SNMP filed the Complaints in this Court when it could have brought suit against Avaya in the District Court (but not against Debtors), asked this Court for relief without limitation, did not timely object to the Court's consideration of Radware Inc's motion to dismiss and then very belatedly moved before the District Court to withdraw the reference thereby waiving its request for a jury trial.

SNMP points to other facts which it claims thwart the arguments that it knowingly and voluntarily consented. First, there are the express reservations in the Complaints of its entitlement to proceed in the District Court and that it was not subjecting itself to the Court's authority.  As quoted above, and it bears repeating, SNMP could not be more clear in the Complaints that SNMP "does not consent to entry of final orders by the Bankruptcy Judge in this proceeding as to causes of action against Avaya."  Further, the Complaints include the statement, that SNMP "intends to seek the permission of the District Court to withdraw the reference to this Court of this adversary proceeding." Second Amended Complaint, paragraphs 12 and 14.  Second, SNMP clearly and properly requested a jury trial, both in the caption of the Complaints and in the body of the Complaints.  It is abundantly clear that the Court's authority to conduct a jury trial is virtually non-existent. 28 U.S.C. § 157(e) provides that unless the District Court designates such authority to the Court (which it has not) and unless the parties – all parties – expressly consent

(which they will not), the Court cannot honor the request for a jury trial.

Avaya and the Debtors make a strong case for a finding that SNMP consented to the Court's authority to fully adjudicate SNMP's claims all the way to a final order. After all, SNMP filed the case in this Court when it could have sued Avaya in the District Court at the outset. SNMP briefed the Radware Inc. motion to dismiss and only filed a notice of intention to move to withdraw the reference on the day of oral argument.[3] Then, SNMP waited almost 17 months to file its motion to withdraw the reference. There is persuasive case law holding that a litigant's actions qualify as consent to a bankruptcy court's authority to adjudicate claims to finality. See, e.g., *Schubert v. Lucent Technologies Inc.* (*In re Winstar Communications, Inc.*)[4], 348 B. R. 234, 251 (Bankr. D. Del. 2005) (party impliedly consented to bankruptcy judge's final determination having sought judgment from the bankruptcy court); *In re River Entertainment Co.*, 467 B.R. 808, 822-24 (Bankr. W.D. Pa. 2012) (party found to have consented to bankruptcy court's adjudication of its claims after removing case to

---

[3] Avaya and Debtors have pointed to comments the Court made at the argument on the motion to dismiss. The Court expressed its annoyance with SNMP for filing the notice immediately before argument. However, since the import of the motion to dismiss was not the Court's authority, the Court was not focused on consent and did not at the time have all the facts necessary to place SNMP's action in context.

[4] The *Winstar* facts are actually instructive against a finding of consent. In *Winstar*, by Avaya's own description, the defendant, Lucent, never noted any limitation on the Bankruptcy Court's authority to enter final judgment and the Bankruptcy Court found that Lucent had "repeatedly sought judgment in its favor without noting that the Court could only recommend findings and conclusions to the district court." 348 B.R. at 250. Here, SNMP made its position and intention known to the Court and the defendants.

bankruptcy court and failing to timely move to withdraw the reference). Cases which support SNMP's position make the point that courts should be cautious before making a finding of consent. The Court certainly agrees with the concept of caution and the Supreme Court's emphasis on consent being "knowing and voluntary" reinforces deliberation. The Court is persuaded that SNMP did not consent to the Court's authority. The Court is not willing to base a finding of implied consent on the filing of the Complaints in this Court when, as here, SNMP expressly gave notice in the Complaints that it was reserving its rights and, indeed, that it intended to seek the withdrawal of the reference because it was not submitting itself to the Court's authority to enter final orders. Compare *River Entertainment*, 467 B.R. 808. SNMP made its intention known and reserved its rights clearly.

### C. Motion to Withdraw the Reference

It will, of course, be the District Court which decides whether SNMP's motion to withdraw the reference is timely as required by 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."). In the present matter, it is true that SNMP has not acted quickly to move to withdraw the reference, but "timely" does not necessarily mean "quickly." Timeliness is a

relative concept. Between the stays and extensions and mediation, and more importantly the relatively early stage of the adversary proceeding, the District Court may conclude that SNMP filed a timely motion. The only substantive exercise in the adversary proceeding to date was the motion to dismiss by Radware Inc. And that was decided on December 10, 2013. The parties have not commenced discovery or asked the Court to rule on matters of substance to the merits of SNMP's claims. Practically, it is not uncommon for the District Court to deny a withdrawal motion without prejudice if it believes the adversary proceeding is at an early stage, as is the case here. All of that remains to be seen and is beyond the Court's purview. The point is, it is not, in the Court's view, appropriate to base a finding of consent on the timing of a motion to withdraw the reference under the extant circumstances.

### D. Jury Trial Request

SNMP's request for a jury trial fortifies its position that it has not consented to the Court's authority. While Avaya and Debtors argue that SNMP has waived its jury demand by failing to file the motion to withdraw the reference in a timely fashion, a party's right to a trial by jury is so fundamental a right that finding waiver is greatly unfavored. Thus, in , *Billing v. Ravin, Greenberg &Zackin P.A.*, 22 F.3d 1242, 1250-52 (3d Cir. 1994), the Third Circuit Court of Appeals in an in depth opinion

reviewed Supreme Court decisions pertaining to the right to a jury trial.[5] The Court concluded that the Debtors' malpractice action against its lawyers was part and parcel of their objection to the lawyers' request for fees which was a core matter and therefore the debtors were not entitled to a trial by jury for their malpractice claim. What makes *Billing* significant here is that the Court of Appeals explained that the reason the debtors were not entitled to a jury trial was not because their filing in the bankruptcy court constituted a waiver of their right, but because, "the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims. *See Katchen*, 382 U.S. at 336, 86 S.Ct. at 476." *Billing*, 22 F.3d at 1252, n. 14. The request by SNMP for a jury trial adds to the Court's unwillingness to find that SNMP has impliedly consented to the Court's authority.

### E. Debtors

The Debtors are also defendants. There is no question that the claims against Debtors (Counts II, V and IX) are core claims as all parties concede. The claims in the Complaints against Debtors are part of the Debtors' claim process and arise from the Court's orders approving the sale to Avaya. No one questions the Court's authority to enter final orders as to these claims. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). There is also no right to a jury trial on the claims against Debtors. *See Billing*.

---

[5] The Court of Appeals discussion includes *Katchen v. Landy*, 382 U.S. 323 (1966), *Granfinaciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), and *Langenkamp v. Culp*, 498 U.S. 42 (1990).

Therefore, this decision does not address the claims against Debtors. The Court does have concerns that this adversary proceeding will have an adverse affect on the Debtors' ability to conclude their bankruptcy cases. The allocation of $7.3 billion among various estates around the globe which is tied to allowed claims might be slowed if Debtors are stymied by what is already a four year litigation between SNMP and Avaya. The Court can offer no solution to the problem except to emphasize that the pending adversary proceeding is a potential obstacle. The District Court's very heavy caseload makes an early trial date unlikely if not impossible. One solution if the District Court does not withdraw the reference or withdraws the reference but designates the Court to handle pretrial matters, is for the Court to enter a scheduling order which expedites discovery and any dispositive motions. The Court will enter such a scheduling order.

## CONCLUSION

For the foregoing reasons, the Court finds that SNMP has not consented to the Court's authority to issue final orders or judgments on its claims against Avaya. An Order will issue consistent with this opinion.

Dated: June 2, 2015

_____
KEVIN GROSS, U.S.B.J.

Therefore, this decision does not address the claims against Debtors. The Court does have concerns that this adversary proceeding will have an adverse affect on the Debtors' ability to conclude their bankruptcy cases. The allocation of $7.3 billion among various estates around the globe which is tied to allowed claims might be slowed if Debtors are stymied by what is already a four year litigation between SNMP and Avaya. The Court can offer no solution to the problem except to emphasize that the pending adversary proceeding is a potential obstacle. The District Court's very heavy caseload makes an early trial date unlikely if not impossible. One solution if the District Court does not withdraw the reference or withdraws the reference but designates the Court to handle pretrial matters, is for the Court to enter a scheduling order which expedites discovery and any dispositive motions. The Court will enter such a scheduling order.

## CONCLUSION

For the foregoing reasons, the Court finds that SNMP has not consented to the Court's authority to issue final orders or judgments on its claims against Avaya. An Order will issue consistent with this opinion.

Dated: June 2, 2015

_____
KEVIN GROSS, U.S.B.J.