REDACTED

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re Nortel Networks Inc., *et al.,* | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | 09-10138 (KG) |
| | ) | (Jointly Administered) |
| | ) | |
| SNMP Research International, Inc. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SNMP Research, Inc., | ) | Adv. Proc. No. 11-53454 (KG) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Avaya Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF DR. JEFFREY D. CASE IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO U.S. DEBTORS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Dr. Jeffrey D. Case, do hereby declare as follows:

1. I am the founder and Chief Technology Officer of SNMP Research, Inc. ("SNMPR"), which is responsible for the development of a software implementation of the Simple Network Management Protocol (the "Protocol") and related standards that I helped

---

[1] Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Component Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

develop and co-authored. I am also a contractor consultant to SNMP Research International, Inc. ("SNMPRI"). SNMPRI is 95%-owned by my wife, Mary Case, who acts as CEO of SNMPRI. SNMPRI is responsible for the sales, marketing, and licensing of software primarily developed by SNMPR. I am authorized to sign this Declaration on behalf of both SNMPRI and SNMPR, which are collectively referred to herein as "SNMP Research." I have personal knowledge of the matters to which I hereinafter declare and am competent to testify to the matters stated.

### A. The Software and Protocol

2. I am a co-author of the software at SNMPR which provides trilingual support for SNMPv1, SNMPv2 (formerly SNMPv2p and SNMPv2* and now SNMPv2c), and SNMPv3. The copyright in the software is owned by SNMPR. The software is licensed to SNMPRI which prepares, licenses, and distributes specific compilations of software products and documentation to third parties. The above-described software and the compilations created by SNMP Research are collectively referred to in this Declaration as the "Software." The Software, as defined in this Declaration, is a more detailed description of the "Software" as defined in the Brief in Support of Plaintiffs' Motion for Partial Summary Judgment [Adv. D.I. 286] (the "Opening Brief") and the Brief in Opposition to U.S. Debtors' Motion for Partial Summary Judgment and in Further Support of Plaintiffs' Motion for Partial Summary Judgment (the "Opposition/Reply Brief"), filed contemporaneously herewith.[2]

3. SNMPRI's primary business is selling intellectual property licenses and distributing to its customers the Software along with providing related support services. The Software is distributed in the form of computer source code and binary code to, among others, network equipment manufacturers such as Nortel, to allow their products to implement the

---

[2] Capitalized terms not otherwise defined in this Declaration have the meaning ascribed to them in the Opening Brief and Opposition/Reply Brief, as applicable.

53651/0001-12516491v4

Protocol and related standards including other portions of the Internet-Standard Management Framework.

4. With respect to Nortel and the buyers to which Nortel transferred its various business units in bankruptcy, SNMP Research has not and does not sell copies of the Software to its licensees. Instead, SNMP Research provides them with copies of the Software for their licensed use, but the Software itself always remains the property of SNMP Research.

5. The Protocol is a standard for managing devices on computer networks defined by the Internet Engineering Task Force, the relevant standards-setting body for the Internet. The Protocol runs on Internet Protocol (IP) networks, such as the Internet and most intra-corporate networks (intranets). These networks usually have a computer that manages and controls the network (called the "manager") and other devices (computers, routers, switches, printers, scanners, etc.) that are managed (monitored and controlled) by the manager. Managed devices execute a software component called an "agent" which sends messages regarding the status of the managed device to, and receives messages from, the manager. In short, an agent responds to queries and commands using the Protocol to provide status and statistics about a managed device. A manager manages (monitors and controls) managed devices on a network which have agents by issuing requests, getting responses, and by listening for and processing agent-issued notifications from the agent to the manager (sometimes called "traps").

6. A majority of managed networked Internet devices throughout the world implement the Protocol. When used for monitoring, the Protocol typically provides information to a central console about the status of thousands of pieces of information within a managed network device or system. A person operating a central manager console is also able to use the Protocol to set pieces of information to control the managed devices in the network.

3

**B.    The Copyrights**

7.    Various versions of the Software are the subject of the U.S. copyright registrations set out below:

| Company | Product | Registration Date | Registration Number |
|---|---|---|---|
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15 | January 25, 2011 | TXu 1-706-718 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.2 | July 20, 2011 | TXu 1-772-248 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.3 | July 20, 2011 | TXu 1-772-250 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.4 | February 3, 2011 | TXu 1-738-956 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 16 | February 3, 2011 | TXu 1-707-158 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 16.2 | February 3, 2011 | TXu 1-738-954 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 17 | February 3, 2011 | TXu 1-707-157 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 17.2 | February 3, 2011 | TXu 1-738-958 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15 | February 17, 2011 | TXu 1-710-420 |

| Company | Product | Registration Date | Registration Number |
|---|---|---|---|
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15.2 | February 17, 2011 | TXu 1-710-462 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15.3 | February 17, 2011 | TXu 1-710-430 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 15.4 | February 17, 2011 | TXu 1-710-425 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 16 | February 17, 2011 | TXu 1-710-413 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 16.2 | February 8, 2011 | TXu 1-710-422 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 17 | February 8, 2011 | TXu 1-710-417 |
| SNMP Research International, Inc. | SNMP Research Collection: Source Code and Documentation Version 17.2 | February 17, 2011 | TXu 1-710-435 |

8.     True and accurate copies of the registrations are attached hereto collective as Exhibit A.

5

### C.    The Three Enjoining Sale Orders

9.     In agreeing to paragraph 37 of the Ericsson CDMA/LTE Sale Order, in partial resolution of SNMPRI's objection to the CDMA/LTE Sale Motion, I intended for the term "intellectual property" to include the Software, as distinguished from simply the right to use the Software. See Bankr. D.I. 1205; Appendix to Brief in Support of Plaintiffs' Motion for Partial Summary Judgment [Adv. D.I. 287] ("Appx.") at Ex. 6.  I also understood and intended for paragraph 37 of the CDMA/LTE Sale Order to prohibit the transfer of the Software, not just the right to use it, and to confirm that the Software was not being transferred as part of the CDMA/LTE Sale without SNMP Research's express written permission.

10.    In agreeing to paragraph 25 of the Ciena Sale Order in resolution of SNMPRI's objection to the Ciena Sale Motion, I intended for the term "intellectual property" to include the Software, as distinguished from simply the right to use the Software.  See Bankr. D.I. 2070; Appx. at Ex. 15.  I also understood and intended for paragraph 25 of the Ciena Sale Order to prohibit the transfer of the Software, not just the right to use it, and to confirm that the Software was not being transferred as part of the Ciena Sale without SNMP Research's express written permission.

11.    In agreeing to paragraph 41 of the Second GSM Sale Order in resolution of SNMPRI's objection to the Second GSM Sale Motion, I intended for the term "intellectual property" to include the Software, as distinguished from simply the right to use the Software. See Bankr. D.I. 3048; Appx. at Ex. 20.  I also understood and intended for paragraph 41 of the Second GSM Sale Order to prohibit the transfer of the Software, not just the right to use it, and to confirm that the Software was not being transferred as part of the Second GSM Sale without SNMP Research's express written permission.

D.  **SNMP Research's Profit Damages Claims Relating to Nortel's Sales to Radware, Hitachi and Kapsch**

12. This portion of my Declaration is being submitted to address the U.S. Debtors' reliance on my Canadian discovery (i.e., deposition) at paragraphs 46 (footnote 30) and 47 of the U.S. Debtors' Brief. As a threshold matter, it was my understanding, prior to the Canadian deposition that, consistent with normal and customary Canadian rules and procedures, if SNMP Research wanted to correct or supplement certain aspects of the deposition, Canadian procedural rules permit SNMP Research to "undertake" to do so. While the U.S. Debtors rely on my Canadian deposition testimony, their citations to the transcript fail to account for SNMP Research's supplemental responses to undertakings under Canadian procedure during which several statements regarding the Nortel Sales to Radware, Hitachi and Kapsch (i.e., the "First GSM Sale") were supplemented and corrected based on additional evidence received. The "undertakings" have not been completed, but the U.S. Debtors were provided with the undertakings that have been finalized and submitted to the Canadian Debtors, when the U.S. Debtors were provided with the transcript of my Canadian deposition.

13. Contrary to what I said in my Canadian deposition at pp. 294-296, SNMP Research is maintaining its claims against Nortel for the improper transfer, copying and disclosure of SNMP Research's Software to Radware in connection with the sale and transfer of assets in connection with the Radware Sale.

14. [REDACTED]

53651/0001-12516491v4

██████████████████████████████████████████████████
█████████████████████████████████████████[3]██████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████

15. ████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████

16.     With respect to Hitachi, the searches performed by Mr. Chisholm have led me to conclude that evidence does in fact exist to suggest that Hitachi received SNMP Research's Software improperly, and that the Software was contained in Nortel products included in the Hitachi Sales. As a threshold matter, the Gascon Declaration provides that Nortel transferred or disclosed approximately 69 VOBs to Hitachi in association with the Hitachi Sale. It is my understanding from my review of the Chisholm Declaration that the VOB searches which he and the other searchers have performed on the Nortel ClearCase servers indicate that, when

---

[3] ████████████████████████████████████████████

examining the VOBs Nortel sent or disclosed to Hitachi, two Nortel VOBs were identified which contain approximately 617 versions of files containing SNMP Research copyright notices and/or other indicia of the presence of SNMP Research's Software. Those two VOBs are related to Nortel products and product families, including, among others, the following:

      █      ████████████████████████████████████ and

      (b)      other files containing SNMP Research's copyright notices in other VOB(s) for which the relationship to particular Nortel products is less clear.

17.      Discovery is ongoing and the list above is still subject to expansion or change. At this time, I am unable to explain fully the discrepancies between (a) the previous findings of Hitachi's searchers who previously reported that they did not find any Software in the software received from Nortel (which, in part, led to my Canadian deposition testimony), and (b) the subsequent findings of Mr. Chisolm and the other searchers who found multiple hundreds of files with SNMP Research's copyright notices in the files Nortel transferred or disclosed to Hitachi. I do note that communications were difficult between SNMP Research and Hitachi, presumably due to differences in the native languages of Mr. Southwood (English) and his colleagues at Hitachi (Japanese), including Mr. Furuike and Mr. Sakurai, which may have been one factor. Discovery is ongoing which is expected to fill the information gap.

18.      Lastly, with respect to Kapsch, the results of Mr. Chisholm's searches, among other things, have led me to conclude that evidence does in fact exist that Kapsch improperly received SNMP Research's Software, and that the Software was contained in Nortel products included in the Kapsch Sale. As a threshold matter, the Gascon Declaration provides that Nortel transferred or disclosed approximately 741 VOBs to Ericsson and 276 VOBs to Kapsch in association with the First GSM Sale.

19. It is my understanding from my review of the Chisholm Declaration that approximately sixteen VOBs were identified which contain approximately 1,865 versions of files containing SNMP Research copyright notices, one of several possible indicia of the presence of SNMP Research Software. These VOBs and files were associated with a Kapsch work order and may indicate that these files were transferred and/or disclosed to Kapsch as part of the First GSM Sale.

20. I am unable to reconcile the discrepancies between (a) the findings of the Kapsch searchers who reported that they found only minimal Software in the software received from Nortel (which, in part, led to my Canadian deposition testimony), and (b) the subsequent findings of Mr. Chisholm who found hundreds of files with SNMP Research's copyright notices in the files Nortel transferred or disclosed to Kapsch. Discovery is ongoing and this list is still subject to expansion or change. I believe that further investigation would likely reveal more information concerning precisely how these files were handled.

E. **Nortel's Unsuccessful Attempt to "Write Out" the Software**

21. █████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████

22. █████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

10

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████

23.   ██████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████

### F.   Outstanding Discovery Requests and Need for Additional Information

24.   To rebut the U.S. Debtors' anticipated "apportionment" evidence, SNMP Research intends to present expert testimony on the value of the Software to the overall Business Line Sales. The evidence needed to complete these expert reports includes, but is not limited to, the following general categories: (i) the completion of expert searches and analysis of the VOBs

11

on the Canadian and U.S. Debtors' "ClearCase" servers in Canada and the United States; (ii) financial information from the U.S. Debtors, including historical revenues and projections concerning the products transferred to business line asset buyers containing the Software; and (iii) financial information from certain asset buyers (Avaya, Radware and Ericsson, presently), including projection and sales information with respect to purchased Nortel products containing the Software ("Infringing Products"), tax allocations and valuation reports. The specific outstanding discovery requests relating to SNMP Research's valuation of the Software (which overlaps with addition evidence SNMP Research would put forth, if required, that the Software was included in the sold Nortel products) are described in the paragraphs below.

25.   On August 14, 2015, SNMP Research issued *Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Debtors* (the "First Discovery Request to Debtors") [Adv. D.I. 241]. On August 17, 2015, SNMP Research issued *Plaintiff's Second Set of Interrogatories and Requests for Production of Documents to Debtors* (the "Second Discovery Requests to Debtors") [Adv. D.I. 242]. On September 4, 2015, the U.S. Debtors served the *U.S. Debtors' Responses and Objections to Plaintiff's First and Second Sets of Interrogatories and Requests for Production of Documents to Debtors* (the "U.S. Debtors' Discovery Responses"). See Adv. D.I. 260 and Exhibit D. Numerous document requests issued to the U.S. Debtors relate to SNMP Research's valuation of the Software in the context of the Business Line Sales. See, e.g., U.S. Debtors' Discovery Responses to Document Requests 4, 14, 27 through 30, 40, 41, 43, 47, 54, 64 through 70, 74, 76 through 80 and 83 and Interrogatories 4 and 14.[4] On October 2, 2015, counsel for SNMP Research issued a letter identifying numerous deficiencies in the U.S. Debtors' Discovery Responses. See Exhibit E. As of the date hereof, the

---

[4] This list is illustrative, not exhaustive, and is without prejudice to SNMP Research's right to use any document or other information received in response to any document request or interrogatory regarding the issue of valuation.

U.S. Debtors have not produced any financial documents in discovery and their interrogatory responses provide no useful information. In fact, the only document the U.S. Debtors have produced thus far in discovery is a list of the VOBs housed on the U.S. Debtors' ClearCase servers, and that document was produced on November 25, 2015. SNMP Research and the U.S. Debtors have been discussing, through counsel, an amicable way forward in discovery, which is why SNMP Research has not yet sought Court intervention to press for overdue documents and sufficient interrogatory responses. SNMP Research expects to receive a proposal from the U.S. Debtors regarding a specific discovery plan in the near future.

26.     Another issue that is unresolved relating to SNMP Research's valuation of the Software in the context of the Business Line Sales is access to the U.S. Debtors' "ClearCase" servers in North Carolina. Searching of the U.S. Debtors' ClearCase servers is necessary to determine or confirm what VOBs transferred to buyers contain SNMP Research's Software and what transferred Nortel products contain SNMP Research's Software. Now that SNMP Research believes it has the full list of the VOBs contained in the U.S. ClearCase servers (which was produced on November 25, 2015), the parties can attempt to work together to develop a protocol for searching the U.S. ClearCase servers, just as SNMP Research developed a protocol with the Canadian Debtors to search the Canadian ClearCase servers.

27.     On August 14, 2015, SNMP Research issued *Plaintiff's First Set of Interrogatories and Requests for Production of Documents to Avaya Inc.* (the "First Discovery Requests to Avaya") [Adv. D.I. 241]. On August 17, 2015, SNMP Research issued *Plaintiff's Second Set of Requests for Production of Documents to Avaya Inc.* (the "Second Discovery Requests to Avaya") [Adv. D.I. 242]. On September 8, 2015, Avaya served its *Objections and Responses to Plaintiff's First Set of Requests for Production of Documents to Avaya Inc.* (the

13

53651/0001-12516491v4

"First Avaya Discovery Reponses") [Adv. D.I. 263 and Exhibit F] and its *Objections and Responses to Plaintiff's Second Set of Requests for Production of Documents to Avaya Inc.* (the "Second Avaya Discovery Responses") [Adv. D.I. 264 and Exhibit G]. On October 5, 2015, Avaya served *Avaya Inc.'s Objections and Responses to Plaintiff's First Set of Interrogatories (Nos. 1-10)* [Adv. D.I. 283 and Exhibit H] (the "Avaya Interrogatory Responses"). Numerous document requests issued to Avaya relate to SNMP Research's valuation of the Software in the context of the Business Line Sale to Avaya. See, e.g., First Avaya Discovery Responses to Document Requests 4, 9, 10, 17 through 19, 27, 28, 37, 40, 41 and 43; Second Avaya Discovery Responses to Document Requests 50 through 56, 58, 62, 63, 65 through 67 and 69; Avaya Interrogatory Responses to Interrogatories 4 and 9.[5]  Avaya has not provided sufficient responses to the interrogatories and has advised SNMP Research (through counsel) that it is still in the process of investigation. Avaya and SNMP Research are working together to find an agreeable way forward in discovery, and SNMP Research will be providing Avaya proposed search terms for electronic discovery information in the near future. Avaya has produced some documents responsive to the document requests in this case, but has not produced any of the financial information relevant to SNMP Research's valuation of the Software in the context of the Business Line Sale to Avaya. Avaya has not provided sufficient responses to any of the interrogatories related to SNMP Research's valuation of the Software. Avaya has produced revenue and shipment information to SNMP Research relating to some Nortel products in dispute here, in what I refer to as the "Red" case, which is pending before Judge Andrews. Avaya has not produced any purchase price allocation information in this case.

---

[5] This list is illustrative, not exhaustive, and is without prejudice to SNMP Research's right to use any document or other information received in response to any document request or interrogatory regarding the issue of valuation.

53651/0001-12516491v4

28.     On September 4, 2015, SNMP Research filed *Plaintiffs' Motion to Issue a Letter of Request for International Judicial Assistance from Sweden* [Adv. D.I. 258] seeking letters rogatory to take discovery from Ericsson.  On September 16, 2015, SNMP Research filed the *Notice of Filing of Amended Request for International Assistance Pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* (the "Ericsson Document Requests") [Adv. D.I. 271 (attached hereto as Exhibit I)].  On September 25, 2015 this Court entered the *Order Granting Plaintiffs' Motion to Issue a Letter of Request for International Judicial Assistance from Sweden* [Adv. D.I. 281].  On October 27, 2015, SNMP Research filed a *Notice Regarding Taking of Evidence Abroad in Civil or Commercial Matters* [Adv. D.I. 297] indicating that the Stockholm District Court (the "Swedish Court") had directed Ericsson to state an opinion on the discovery issued to it by SNMP Research no later than November 3, 2015.  See Adv. D.I. 297-1.  As of the date hereof, Ericsson has failed to respond in any fashion.  Several of the Ericsson Document Requests relate to the issue of the valuation of the Software as part of the CDMA/LTE sale.  See Ericsson Document Requests 1 through 8.  On November 24, 2015, SNMP Research's counsel sent an e-mail to Ericsson's U.S. counsel in the Business Line Sales to request assistance with reaching someone at Ericsson before seeking additional assistance from the Court.

29.     If the above-described information is obtained through discovery, and the Court determines that SNMP Research must produce more than the gross Business Line Sales revenues to meet its initial burden of showing "gross profits," or additional evidence of the value of the Software to satisfy its causation requirement, the evidence needed to complete the expert reports will preclude summary judgment in favor of the U.S. Debtors by showing, among other things, through various expert reports: (i) a final analysis, after searching all of the available VOBs,

showing what additional VOBs delivered to asset buyers contained the Software; (ii) a final analysis, after searching all of the available VOBs, showing the identity of potentially Infringing Products other than those already identified in the Chisholm Declaration; (iii) the gross revenues and projections from the Infringing Products; (iv) the value of the Infringing Products to the Business Line Sales; and (v) the value of the Software, as a percentage of the overall value of the Infringing Products.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: December 3, 2015

_____
Dr. Jeffrey D. Case