## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., *et al.* | ) | Case No. 09-10138(KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| SNMP Research International, Inc. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SNMP Research, Inc., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 11-53454(KG) |
| | ) | |
| Nortel Networks Inc., *et al.*, | ) | **RE D.I. #305** |
| | ) | |
| and | ) | |
| | ) | |
| Avaya Inc. | ) | |
| | ) | |
| Defendants. | ) | |
| Nortel Networks Inc., *et al.*, | ) | |
| | ) | |
| Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Nortel Networks UK Limited, *et al.*, | ) | |
| | ) | |
| Third Party Defendants. | ) | |
| In re Nortel Networks UK Limited, *et al.*, | ) | Chapter 15 |
| | ) | |
| Debtors in a Foreign Proceeding. | ) | Case No. 09-11972(KG) |
| | ) | (Jointly Administered) |

## MEMORANDUM OPINION

The EMEA Debtors,[1] through their Joint Administrators,[2] have moved (the "Motion") to dismiss debtors' ("Debtors") Third Party Complaint. The Debtors include Nortel Networks, Inc., and its affiliated entities. The bases for the Motion are that the Court lacks personal jurisdiction over them and that the Third Party Complaint fails to state a claim upon which the Court can grant relief. The Debtors oppose the Motion. SNMP Research International, Inc. and SNMP Research, Inc. (collectively, "SNMP") takes no position on the Motion but wants to maintain its rights contained in the Impleader Order. For the reasons stated, the Court denies the Motion.

## BACKGROUND

The Motion arises from the copyright adversary proceeding brought by SNMP against Debtors and Avaya, Inc. ("Avaya"), which is pending before the Court (the "Adversary Proceeding"). Without going into details unnecessary to deciding the Motion, it is sufficient to summarize the Adversary Proceeding by writing that SNMP has sued Debtors and Avaya for copyright infringement for the transfer and purchase of SNMP's copyrighted software. The Court has *sub judice* cross-motions for partial

---

[1] "EMEA" stand for European, the Middle Eastern and African affiliates. The EMEA Debtors are: Nortel Networks UK Limited ("NNUK"); NNSA; NNIR; Nortel GmbH; Nortel Networks (Austria) GmbH; Nortel Networks AB; Nortel Networks B.V.; Nortel Networks Engineering Service Kft; Nortel Networks France S.A.S.; Nortel Networks Hispania S.A.; Nortel Networks International Finance & Holding B.V; Nortel Networks N.V.; Nortel Networks Oy; Nortel Networks Polska Sp. z.o.o.; Nortel Networks Portugal S.A.; Nortel Networks Romania SRL; Nortel Networks S.p.A.; Nortel Networks Slovensko, s.r.o.; Nortel Networks s.r.o.

[2] The Joint Administrators for all of the EMEA Debtors, with the exception of Nortel Networks (Ireland) Limited ("NNIR"), are: Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson, and Stephen John Harris. The Joint Administrators for NNIR are: Alan Robert Bloom and David Martin Hughes. Stephen Taylor has been appointed as an additional administrator for Nortel Networks S.A. ("NNSA") to act in relation to certain conflict matters.

summary judgment.  The Second Amended Complaint which SNMP filed (Adv. D.I. 160) alleges that the unauthorized use of SNMP's software continued post-petition and the Debtors are liable for copyright infringement, violations of Delaware trade secret law, and breach of contract.  The Second Amended Complaint also alleges that Debtors improperly transferred SNMP software to purchasers of Debtors' business lines, and that Avaya improperly used and distributed SNMP software.

On July 7, 2015, Debtors filed a motion in the Adversary Proceeding seeking leave to file a third-party complaint against the EMEA Debtors.  In the motion, Debtors asserted that the EMEA Debtors will be required to contribute to any judgment SNMP might receive, based on the proportion of sale proceeds to which the EMEA Debtors are entitled.[3]

The Joint Administrators filed a motion on August 10, 2015, in which they sought to enjoin SNMP or the Debtors from prosecuting claims against the EMEA Debtors in the Adversary Proceeding.  The grounds for the stay motion were that impleading the EMEA Debtors violated the automatic stay of Bankruptcy Code Section 362, breached the English law moratorium,[4] wasted resources because the Third Party Complaint was subject to immediate dismissal, violated Debtors' release of claims against the EMEA Debtors and the Court lacked personal jurisdiction over the EMEA Debtors.  The Court

---

[3]  The Debtors, the EMEA Debtors and others participated in a trial to determine the allocation of the proceeds from the sales of Debtors' and Canadian debtors' business lines (the "Business Line Sales") and intellectual property (the "Allocation Dispute").  On May 12, 2015, the Court and the court sitting in Canada issued opinions calling for a modified pro rata allocation of the sales proceeds (Ch. 11 D.I. 15544 and 15545).  The decisions were later modified (Ch. 11 D.I. 15830).  Debtors assert that the decisions will result in a significant recovery by the EMEA Debtors of the Business Line Sales.

[4]  The EMEA Debtors are involved in insolvency proceedings in England.

on September 15, 2015, issued its Opinion and Order in which it enjoined SNMP and debtors from "pursuing pre-Petition claims against the EMEA Debtors" except before the English court. The Court, however, denied the EMEA Debtors' stay motion. The Opinion and Order are pending on appeal. Adv. 15-11972 D.I.s 155 and 156.

On September 21, 2015, Debtors certified that SNMP had agreed to withdraw its objection to the Impleader Motion and the Court entered its Order granting the Impleader Motion on September 22, 2015. Debtors filed the Third Party Complaint on October 22, 2015 (Adv. D.I. 295).

## DISCUSSION

### Jurisdiction

The EMEA Debtors first argument in support of the Motion brought pursuant to Fed. R. Civ. P. 12(b)(2) is that the Court lacks personal jurisdiction over them and therefore if Debtors (and perhaps SNMP) wish to bring suit against them, it will have to happen before the English court. While it is hard to imagine that the EMEA Debtors who participated before the Court throughout the Chapter 11 cases are not subject to the Court's jurisdiction in the Adversary Proceeding, that is what the EMEA Debtors urge. They contend that the Third Party Complaint contains no allegations which demonstrate that the EMEA Debtors have minimum contacts with the forum such that it is reasonable for the Court to exercise jurisdiction over them.

The jurisdictional allegations of the Third Party Complaint state simply for each of the EMEA Debtors' constituents that they are foreign entities and how they may be served. Third Party Complaint, ¶¶ 12-30. The test for jurisdiction is minimum contacts

and that the exercise of jurisdiction is reasonable.[5]   The EMEA Debtors distinguish between "general" personal jurisdiction and "specific" personal jurisdiction.   General personal jurisdiction in the case of a corporation is, for example, its place of incorporation or its principal place of business.   General personal jurisdiction gives a court sitting in that jurisdiction the authority to hear claims against the corporation wherever they arose.

With specific personal jurisdiction, a court is permitted to exercise jurisdiction over a claim that arises out of or relates to the particular contacts with the forum.   Here, where the EMEA Debtors are neither incorporated in Delaware nor have their principal place of business in Delaware, the burden rests with Debtors to show that the EMEA Debtors' activities in Delaware have been "continuous and systematic," thus making them "at home in the forum state."[6]   Essentially, as the EMEA Debtors argue, when general personal jurisdiction does not exist, specific personal jurisdiction requires that "related conduct with the forum must form the basis for specific jurisdiction."[7]

The Debtors argue that the EMEA Debtors want to retain the profits from the Business Line Sales and leave the Debtors solely responsible for any claims by SNMP. The Debtors claim that the EMEA Debtors, no strangers to the Court, have consented to the Court's jurisdiction.   The Debtors point to a number of actions of the EMEA Debtors, discussed below, which they say evidence the EMEA Debtors' consent to the Court's jurisdiction.

---

[5] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[6] *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014).

[7] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

The Court's analysis of the Motion and Debtors' response starts with *Int'l Shoe Co. v. State of Washington*.  The Supreme Court addressed whether a company, incorporated in Delaware, had by its activities in the State of Washington, rendered itself subject to proceedings in the State of Washington's courts to recover unpaid contributions to the unemployment compensation fund.  The Supreme Court held that jurisdiction did exist.  First, the Supreme Court discussed "continuous and systematic" presence versus casual presence, finding the former bestowed jurisdiction and the latter did not.[8]  The Supreme Court found that the company's operations "establish sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice" to find there was jurisdiction.[9]  The Supreme Court further said: "hence we cannot say that the maintenance of the present suit in the State of Washington involves an unreasonable or undue procedure."[10]  Thus, to establish personal jurisdiction, "due process requires a plaintiff to allege (1) that a defendant has certain contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances."[11]

The Court previously discussed in brief the difference between "general" and "specific" personal jurisdiction in determining the adequacy of a defendant's minimum contacts.  It is clear that Debtors are arguing that the Court has "specific" personal

---

[8]  *Int'l Shoe Co. v. State of Washington*, 326 U.S. at 320.

[9]  326 U.S., at 320.

[10]  *Id.*

[11]  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  *See also World-Wide Volkswagen Corp.*, 444 U.S. at 297.

jurisdiction over the EMEA Debtors and therefore the Court will assess if that "specific" jurisdiction exists.

Whether the forum may consider itself to have specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum and the litigation."[12] The litigation related conduct must form the basis for specific jurisdiction.[13] Specific personal jurisdiction exists where the cause of action relates to the foreign defendant's activities in the forum.[14]

The EMEA Debtors have been present throughout Debtors' Chapter 11 cases. Most importantly, they are beneficiaries of the Business Line Sales which give rise to the Adversary Proceeding and the Third Party Complaint. The Court will refer to but a few of the incidents which convince it that the finding of specific personal jurisdiction exists over the EMEA Debtors.

> (1)    In the Order Pursuant to 11 U.S.C. § 105(a) Approving Cross-Border Court-to-Court Protocol, the Court provided that: "upon any appearance or filing . . . interested parties . . . shall be subject to the personal jurisdiction of the Canadian Court or the U.S. Court, as applicable, with respect to the particular matters as to which they appear before that Court."[15]

---

[12] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014), quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

[13] *Id.*

[14] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

[15] Ch. 11 D.I. 18, Ex. B. ¶ 20.

(2)     The attorneys for the Joint Administrators entered a notice of appearance in the Chapter 11 proceedings without asserting any jurisdictional reservation of rights.[16]

(3)     In respect of the Business Line Sales, because of the Allocation Dispute, there were a series of escrow agreements providing that each party, including the EMEA Debtors, submitted to the Court's jurisdiction and agreed to be bound by any judgment relating to the escrow agreements.[17]

(4)     In the Interim Funding and Settlement Agreement ("IFSA"), parties including the EMEA Debtors consented to the Court's jurisdiction for "all legal proceedings to the extent relating to the matters agreed in th[e IFSA]."[18]   The "matters agreed" included the method for determining entitlement to the proceeds from the Business Line Sales and for establishing their allocation.[19]

The EMEA Debtors were "consistently and systematically" participants in the Debtors' Chapter 11 cases.  The EMEA debtors argue that their actions – filing a claim,[20] participating in the Allocation Dispute, agreeing to the IFSA and escrow agreements – do

---

[16]  Ch. 11 D.I. 811.

[17]  See, e.g., Order, dated December 17, 2009.  D.I. 2174, Ex. A.

[18]  IFSA, ¶ 16.b.

[19]   *Id.* § 11-12.

[20]  The EMEA Debtors claims were the subject of the Settlement Agreement but do represent action they took in the Chapter 11 case.

not subject them to jurisdiction because the Adversary Proceeding is unrelated and of a different subject matter.[21]   Here, however, the Court is convinced that the Adversary Proceeding is related to the Allocation Dispute and, with it, the filing of the claim, notice of appearance, the IFSA and the escrow agreements.   Having been awarded proceeds from the Allocation Dispute, an allocation which included the proceeds from the Business Line Sales, the Adversary Proceeding is related to the Allocation Dispute.   The EMEA Debtors assert that none of what the Court finds links them to the Adversary Proceeding is a basis for jurisdiction.   The Court does not agree that the Adversary Proceeding is so removed from the Allocation Dispute that the EMEA Debtors' participation in the Allocation Dispute does not provide the Court with jurisdiction.   The Allocation Dispute in which the EMEA Debtors participated and the portion of the Business Line Sales that the EMEA Debtors will recover from its disposition give rise to the Court's jurisdiction over the EMEA Debtors in the Adversary Proceeding.   The Court finds that the EMEA Debtors participated in the Chapter 11 case "continuously and systematically" and are therefore subject to the Court's *in personam* jurisdiction.

---

[21]   *See, e.g., Asousa P'ship v. Pinnacle Foods, Inc.*, 276 B.R. 55, 67 (E.D. Pa. 2002) ("[A] creditor who files a claim in the bankruptcy court . . . impliedly consents to being sued on counterclaims arising out of the same but not unrelated transactions."); *In re Carnell Const. Co.*, 424 F.2d 296, 298-99 (3d Cir. 1970) (filing a claim "does not constitute implied consent to be sued on an alleged cause of acting arising out of a different subject matter.")

<u>The Release</u>

The Court previously expressed its strong concern that the release that the EMEA Debtors received in the Settlement Agreement is a bar to their being sued by Debtors. The Settlement Agreement provides:[22]

> <u>US Interests</u>:  Subject to Sections 4.1 and 4.2, on the Effective Date, and without the need for additional documentation or the entry of any additional orders, the US Interests, and (to the extent under the control of the US Entities) their respective current and former affiliates, subsidiaries, employees, officers, directors, agents, advisors, attorneys, representatives, successors and assigns of the foregoing release and forever discharge the EMEA Debtors, the EMEA Non-Filed Entities, NTF, NNOCL, the UK Pension Parties, the Joint Administrators, the Liquidator, and the French Liquidator, in their respective representative capacities, and their employees, officers, directors, agents, advisors, liabilities, obligations, damages, actions, contribution, subrogation, causes of action, setoffs, recoupments, costs and expenses (including, without limitation, attorneys' or other fees or expenses), the foregoing terms to be construed as broadly as possible and to include the definition of "claim" provided in Section 101(5) of the Bankruptcy Code, whether known or unknown, past or present, fixed or contingent, liquidated or unliquidated, which the US Interests now have, had, may have had or hereafter may have however so arising (the "US Releases," and together with the US EMEA Releases, the US UK Pension Releases and the US French Liquidator Releases, the "<u>Releases</u>").

The release in the Settlement Agreement is problematic for Debtors who are bringing the claims against the EMEA Debtors in the Third Party Complaint. Nonetheless, the Court is satisfied that the assertion of the release in the Motion is premature.  The EMEA Debtors argue that the Settlement Agreement is a public record of which the Court can take judicial notice.  Further, they cite to a case[23] in which the

---

[22]  Settlement Agreement, ¶ 4.6 (Ch. 11 D.I. 12618-3).
[23]  *2 Broadway L.L.C. v. Credit Suisse First Boston Mortg. Capital L.L.C.*, No. 00 CIV. 5773 GEL, 2001 WL 410074, at *6 (S.D.N.Y. Apr. 23, 2001).

Court rejected the plaintiff's request for discovery on a motion to dismiss based on a release. The court granted this motion to dismiss because "[i]t is appropriate to grant a motion to dismiss on the basis of a binding release agreement where, as here, the terms of the agreement are clear and unambiguous." Also, on a motion to dismiss, a court may consider matters of public record, and that the Settlement Agreement was not referenced in the Third Party Complaint is of no moment when the document at issue is a matter of public record.[24] The EMEA Debtors also point out that courts must exercise common sense and not permit a claim to proceed unless it is plausible that the plaintiff will succeed.[25]

At this point in the Adversary Proceeding, the Court is unwilling to step outside what it views as the norm. Release from liability is an affirmative defense which must be raised in a responsive pleading.[26] It is also the general rule that a court which is ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) may consider only the allegations of the complaint in determining whether it survives.[27] The exception, not applicable here, is where the plaintiff's claims are based upon the document.[28] The Debtors do not rely on the Settlement Agreement in the Third Party Complaint, nor even refer to it.

---

[24]  *U.S. Bank, N.A. v. DH: Global Forwarding* (*In re Evergreen Solar Inc.*, No. 11-12590(MFW), 2014 WL 300965, at *1 (Bankr. D. Del. Jan. 28, 2014); *Montgomery v. Beneficial Consumer Disc. Co.*, No CIV. A. 04-CV-2114, 2005 WL 497776, at *4 & n. 5 (E.D. Pa. Mar. 2, 2005).

[25]  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[26]  Fed. R. Civ. P. 12(b).

[27]  *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F. 3d 284, 290 (3d. Cir. 2014).

[28]  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

Accordingly, determination of whether the Settlement Agreement released the EMEA Debtors from Debtors' claims must await their filing of a pleading responsive to the Third Party Complaint.  The Court can then decide the Settlement Agreement issue on a motion for judgment on the pleadings or motion for summary judgment, if the EMEA Debtors deem it appropriate to file such a motion.

<u>Vacating the Impleader Order</u>

The EMEA Debtors have asked the Court to vacate the Impleader Order.  The Court will deny the request, having denied the Motion.

<u>CONCLUSION</u>

The Court will deny the Motion and the request to vacate the Impleader Order as explained above.

Dated:  February 1, 2016

KEVIN GROSS, U.S.B.J.