**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Nortel Networks Inc., *et al.*, | ) | 09-10138(KG) (Jointly Administered) |
| Debtors. | ) | |
| SNMP Research International, Inc. and SNMP Research, Inc., Plaintiffs, | ) | |
| v. | ) | Adv. No. 11-53454(KG) |
| Nortel Networks Inc., *et al.*, and Avaya Inc., Defendants. | ) | **Re: Dkt Nos. 359, 360 and 432** |

**MEMORANDUM OPINION**

On February 8, 2016, the Court issued its Memorandum Opinion and Order on the parties cross-motions for summary judgment. D.I. 359 and 360. Defendant Nortel Networks Inc. and affiliated debtors ("Nortel") have asked the Court for clarification of its ruling[1]. SNMP Research, Inc. and SNMP Research International, Inc. (collectively, "SNMP") argue that Nortel's request is an improper request for reargument, but have also requested clarification.

[1] The Court surmises that the motion for clarification was prompted by the decision of the Canadian Court to dismiss SNMP's direct profits claim in an action pending in Canada.

In the Memorandum Opinion, the Court ruled that:

1. The Debtors did not seek and the Court did not authorize either the sale or transfer of anything that Nortel did not own to purchasers of the Business Line Sales, which included as not owned SNMP's intellectual property rights or its software. Memorandum Opinion at 9-10.

2. The Court did not, however, enjoin Nortel from selling or transferring the SNMP software. *Id.*

3. Nortel did in fact transfer to purchasers the SNMP software. Memorandum Opinion at 12, 13, 17.

4. The purchasers in the Business Line Sales later negotiated license agreements with SNMP[2]. Memorandum Opinion at 14.

5. The fact that purchasers entered into their own licenses with SNMP following the sales may reduce or eliminate SNMP's recovery. Memorandum Opinion at 12.

6. However, declarations that SNMP submitted to the Court supported its position that Nortel did transfer the SNMP software to purchasers of the Business Line Sales, transfers which Nortel did not request and the Court did not authorize. Memorandum Opinion at 12-13.

7. If purchasers paid Nortel for the SNMP software and then purchased the license from SNMP, they would have paid twice for the SNMP software. Memorandum

[2] Avaya, Inc., one of the purchasers, only recently entered into an agreement with SNMP. The agreement has not yet became effective.

Opinion at 18.

8. It is therefore SNMP's burden to demonstrate a causal nexus between the infringement and Nortel's profit from the infringement before the burden shifting provision of 17 U.S.C. § 504(b) takes effect. Memorandum Opinion at 15.

This adversary proceeding presents what the Court believes is a unique situation. There is no question that Nortel infringed by transferring SNMP's software to purchasers in the Business Line Sales. The software was embedded in product. At the same time, there is a serious question if Nortel profited from the infringement. Nortel appears not to have received compensation for SNMP software from the Business Line Sales and the purchasers thereafter entered into license agreements with SNMP. The profit question, however, remains a question of fact.

## DISCUSSION

*1. Motion for Reconsideration or Reargument.*

The Court must first address SNMP's argument that Nortel's motion is not a motion for clarification but is a disguised motion for reargument. If the latter, the motion is improper because there is no intervening change in controlling law, availability of new evidence that was not previously available, or need to correct a clear error of law or fact or to prevent injustice. *In re W.R. Grace & Co.*, 398 B.R. 368, 372 (D. Del. 2008). SNMP's argument is that the motion for clarification asks the Court to reverse its ruling contained in the Memorandum Opinion and Order and the Court should deny the motion outright. The Court, however, does not take the motion to ask the Court to reverse itself and in any

event the Court will not do so. The parties are in the midst of discovery. The Court is hopeful that Nortel's design is to have the Court clarify its Memorandum Opinion and, in doing so, help to narrow discovery and lead to a productive trial. SNMP has also asked the Court for clarification which the Court will address.

*2. Nortel's Request for Clarification*

In addressing Nortel's request for clarification, the Court will necessarily repeat what it believed was apparent from the Memorandum Opinion. In its reply brief, Nortel states the premise of its motion, namely:

> [SNMP] cannot sustain a "profits" claim for a part of the Purchase Price paid in the Business Line Sales: the Sale Agreements and Sale Orders expressly provided that the only property being sold and paid for with the Purchase Price was the Debtors' property – and not the property of [SNMP] or any other third party.

It is true that Nortel (and the Court) acted "as carefully and responsibly as possible" in the Business Line Sales. Reply Br. at 3. Further, it appears but is not certain that the purchasers in the Business Line Sales also acted responsibly by recognizing that they were not purchasing the SNMP software and therefore entering into the purchase of the license from SNMP. The problem is, however, that in the Business Line Sales the SNMP software was transferred to purchasers – the software was embedded in what Nortel sold to purchasers. The transfer constitutes infringement under the Copyright Act. Section 106 of the Copyright Act (17 U.S.C. § 106) makes it clear that the owners of the copyright, in this case SNMP, have the exclusive right to distribute copies of the copyrighted work. Section 504 of the Copyright Act (17 U.S.C. § 504) then provides what the copyright

owners, SNMP, are entitled to recover – actual damages, additional profits of the infringer or statutory damages. According to Section 504:

> (b) Actual Damages and Profits. – The copyright owner is entitled to recover. . . any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

There was an infringement, the transfer of SNMP's copyrighted software. According to the Orders entered on the Business Line Sales, Nortel did not sell the SNMP software and the Court did not approve the sale of SNMP software. The purchasers in the Business Line Sales entered into license agreements with SNMP after the sales. It would therefore seem that Nortel did not profit from the transfer of the SNMP software. Yet, that is the question that remains from these facts. What did the purchasers think they were buying and would they have gone through with the purchases if they could not use any products with SNMP's software embedded? Also, did the purchasers attribute any portion of the purchase price to the SNMP software? Finally, what did the purchasers' after-the-sale license agreements with SNMP involve? If, for example, the purchasers paid SNMP less than its going price for the software because they had already paid Nortel something for the software, despite the Orders indicating that Nortel was only selling what it owned, such a fact would be telling. It is for these reasons that the Court denied Nortel's motion for summary judgment. It therefore appears that the evidence and testimony of the

purchasers of the Business Line Sales are critical to answering the questions. The Court trusts that this clarification is useful.

*3. SNMP's Request for Clarification*

In its opposition to the motion for clarification, SNMP asks the Court to clarify several points from the Memorandum Opinion. Although the request is more in the nature of a motion for reargument, the Court will clarify its holding.

First, SNMP asks whether"the argument that the Software had no value because buyers had to pay [SNMP] for the right to use it must be raised by [Nortel] once the burden shifts to them." SNMP Br. at 15. The brief answer to the request for clarification is "yes." Once – or if – SNMP shows the causal connection between the infringement and profits, it will be Nortel's burden to show that purchasers entry into the license agreements was full compensation to SNMP. Whether or not the purchasers' license agreements with SNMP eliminated or reduced any profits will be Nortel's burden to prove.

Second, in opposing Nortel's motion for summary judgment, SNMP submitted evidence which was unrebutted and showed which Nortel products sold in the Business Line Sales contained the SNMP software. SNMP asks the Court to identify what additional evidence SNMP needs to submit.

This is a very unusual case. Nortel claims that it did not sell the SNMP software and the Orders confirm that position. Later, purchasers of what Nortel did sell in the Business Line Sales entered into license agreements with SNMP for its software. Under these circumstances, the Court has placed the burden on SNMP to establish that Nortel profited

from the sale of SNMP software. The fact that the software was embedded in the products Nortel sold was not sufficient to reverse the burden onto Nortel to prove, as the Copyright Act requires, its "deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Copyright Act, § 504(b).

What does SNMP bear the burden to prove? It must show that the purchasers in the Business Line Sales paid Nortel for the SNMP software. Did Nortel receive any amount for the embedded SNMP software? Once SNMP proves that the compensation in the Business Line Sales included payment for the software, the burden will shift to Nortel to prove its "deductible expenses and the elements of profit attributable to factors other that the copyrighted work." Copyright Act, Section 504(b). The Court will not outline for SNMP how it should proceed to develop proof, but surely the Business Line Sales purchasers are essential to its proof.

*4. Final Word*

Finally, it appears that SNMP's claim may be as high as $200 million. While that amount may turn out to be valid and the Court surely has not yet even begun to formulate a view, it does strike the Court as being many multiples of an amount the parties should be discussing to resolve the claim. A dollar amount for a settlement should be far below $200 million and the Court encourages both Nortel and SNMP to negotiate in good faith.

Dated: July 7, 2016

KEVIN GROSS, U.S.B.J.